CONTINENTAL STATE BANK, BOYD, Texas, Appellant,

v.

MILES GENERAL CONTRACTORS, INC., Appellee.

No. 2–83–117–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 7, 1983.

William A. Nobles, Decatur, for appellant.

Zimring & Warner, P.C. and Robert M. Warner, Dallas, for appellee.

Before HUGHES, ASHWORTH and SPURLOCK, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This appeal arises from a suit brought by Miles General Contractors, Inc. (hereinafter referred to as Miles Contractors) against Continental State Bank, Boyd, Texas (hereinafter referred to as the bank) for damages in the amount of $3,758.50. Miles Contractors sued for recovery of this sum lost as a result of the bank's cashing two checks payable to Miles Contractors, but endorsed by Tim Price, who was not authorized to

endorse checks in the name of Miles Contractors. The bank paid the proceeds to Tim Price.

We affirm except as to that portion awarding attorney's fees, which we reverse and render.

The facts are undisputed. The bank contracted with Miles Contractors for certain roofing repair work to be done on the bank's building in Boyd, Texas. J.B. Miles, president of Miles Contractors, and Tim Price, an employee of Miles Contractors, negotiated with B.G. Freeman, president of the bank, for the job. An agreement was reached. Price signed the contract as a representative of Miles Contractors and personally supervised the roofing work on a day-to-day basis during the two weeks it took to complete the work. The contract provided for payment in full to be made ten days after completion of the work with no provision for any advance draws.

On June 25, 1981, prior to completion of the work, Price informed Freeman that he needed to draw some money on the contract to pay for labor and materials. Without any authorization from Miles Contractors, the bank issued a check payable to Miles General Contractors, Inc. in the amount of $3,500.00. Price endorsed the check: "Miles General Contractors, Inc. by: Tim Price" and presented it to the bank for payment. The bank, without determining whether Price was authorized to endorse checks on behalf of Miles Contractors, or making any inquiries of Miles Contractors in reference thereto, cashed the check, giving the cash to Price.

The bank issued a second check payable to Miles Contractors on June 26, 1981 in the amount of $5,258.50, the balance due under the contract, and handed it over to Price. The bank informed Price that it would not honor the check until a letter guaranteeing the work performed under the contract was received by the bank. On July 9, 1981, the bank received the requested letter of guarantee which was signed by Price. Price endorsed the second check payable to Miles Contractors, just as he had done with the first check, and presented it to the bank for

payment. The bank accepted the $5,258.50 check on Price's endorsement, again without inquiring whether Price was authorized to endorse checks on behalf of Miles Contractors, and in payment thereof issued a cashier's check in the amount of $5,000.00, payable to Miles Contractors, and paid the balance of $258.50 to Price in cash.

Miles Contractors never received any of the $3,500.00 Price received in cash as a result of cashing the check dated June 25, nor the $258.50 Price received in cash as a result of cashing the $5,258.50 check dated June 26. Miles Contractors did receive the $5,000.00 cashier's check issued by the bank July 9. Apparently, Price misappropriated $3,758.50 to his own use and benefit and left for parts unknown.

Miles Contractors brought suit against the bank to recover the $3,758.50 on grounds of negligence and conversion, and sought reasonable attorney's fees pursuant to TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1982–1983). The bank answered by general denial and set forth affirmatively the defense of apparent authority and estoppel.

After a trial before the court on stipulated facts, the trial court rendered judgment for Miles Contractors to recover from the bank $3,758.50 plus interest and attorney's fees in the amount of $2,400.00 plus interest.

No findings of fact and conclusions of law were requested or filed, nor were any stated in the judgment. Therefore, we will affirm the judgment if it can be sustained "on any reasonable theory supported by the evidence and authorized by law." *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.*, 565 S.W.2d 916, 918 (Tex. 1978).

The bank asserts that the trial court erred in rendering judgment for Miles Contractors because (1) Price, an agent for Miles Contractors, had apparent authority to endorse and cash checks on behalf of Miles Contractors, (2) Miles Contractors by its own acts and conduct in placing its agent in a position of apparent authority is

estopped from denying such authority existed, (3) the payee of a check has no direct cause of action against the drawee for payment of a check upon a forged or unauthorized endorsement, and (4) the original indebtedness was extinguished when the bank delivered the checks to an agent of Miles Contractors. In addition, the bank challenges the award of attorney's fees pursuant to art. 2226, supra.

Initially, we will address the bank's third point of error, in which the bank contends that Miles Contractors has failed to state a cause of action for the reason that the payee of a check has no direct cause of action against the drawee for payment of a check upon a forged or unauthorized endorsement. In support of its position, the bank relies on *Strickland Transport Co. v. First State Bank of Memphis,* 147 Tex. 193, 214 S.W.2d 934 (1948), wherein the Texas Supreme Court held that the bank would not be liable to the payee even though the bank cashed checks upon an agent's unauthorized endorsement. The *Strickland* result was criticized as leaving the payee without a remedy while allowing the drawee bank which improperly paid the check to remain free from liability. *Farnsworth, A General Survey of Article 3 and an Examination of Two Aspects of Codification,* 44 Tex.L.Rev. 645, 656 (1966). Some early Texas courts took a different view and placed a duty on the bank to determine an agent's authority to endorse his principal's checks. *See Independence Indemnity Co. v. Republic National Bank & Trust Co.,* 114 S.W.2d 1223 (Tex.Civ.App.—Dallas 1938, writ dism'd); *Morris Plan Bank of Fort Worth v. Continental National Bank of Fort Worth,* 155 S.W.2d 407 (Tex.Civ. App.—Fort Worth 1941, no writ). In *Morris Plan, supra,* at 409, we stated that "[i]t is elemental that if a bank pays a check to one other than the actual payee or to his order, or is mistaken as to the payee's identity or is paid upon a forged endorsement of payee, the bank is responsible." *See also Heusinger Hardware Co. v. Frost National Bank,* 364 S.W.2d 851 (Tex.Civ.App.—Eastland 1963, no writ).

The issue was settled with the adoption of the Uniform Commercial Code in TEX. BUS. & COM.CODE ANN. sec. 1.101 et seq. (Vernon 1968) (hereinafter referred to as the Code) which provides at § 3.419(a)(3) that an instrument is converted when paid on a forged endorsement. Further, the Code makes no distinction between a forgery and an unauthorized endorsement. "Unauthorized indorsement" is defined in § 1.201(43) to mean "one made without actual, implied or apparent authority and includes a forgery." The comment to § 3.419 states: "[This provision] adopts the prevailing view of decisions holding that payment on a forged indorsement is not an acceptance, but that even though made in good faith it is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion." TEX.BUS. & COM. CODE COMMENT § 3.419(3) (Vernon 1968). Section 3.406 of the Code provides:

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

Comment 6 to this section states that "[§ 3.406] protects parties who act not only in good faith . . . but also in observance of the reasonable standards of their business. Thus any bank which takes or pays an altered [or unauthorized] check which ordinary banking standards would require it to refuse cannot take advantage of the estoppel."

In the instant case, Miles Contractors brought suit against the bank, alleging that the bank was negligent in honoring two checks payable to Miles Contractors. These checks were presented and endorsed by Tim Price, an employee of Miles Contractors. The evidence shows Price was not in fact authorized to endorse checks in the

name of Miles Contractors and not authorized to receive funds for the benefit of Miles Contractors. The bank failed to determine whether Price was authorized to accept funds for Miles Contractors, and representatives of the bank knew or should have known that Price was not so authorized. In the alternative, Miles Contractors alleged that the bank converted funds belonging to Miles Contractors in the amount of $3,758.50 by paying said funds to one unauthorized to receive same.

We find the allegations sufficient to allege a cause of action against the bank. Accordingly, point of error three is overruled.

In its first two points, the bank contends that the trial court erred in rendering judgment for Miles Contractors because (1) Price, as an agent of Miles Contractors, had apparent authority to cash checks given him by the bank in payment of the debt owed to Miles Contractors, and (2) Miles Contractors, by its own acts and conduct, placed Price in a situation that justified the bank's presuming Price's authority to cash the checks. Therefore, the bank argues, Miles Contractors was estopped from denying such authority existed in Price. We find that the facts do not support the bank's contentions.

 It is well settled that a general agency does not imply authority in an agent to endorse checks payable to his principal, but an agent's authority with respect to negotiable instruments is limited to a power to act in a manner and under circumstances specified in an express grant of power in the absence of circumstances showing a broader apparent authority. *Heusinger Hardware v. Frost National Bank, supra; Morris Plan Bank of Fort Worth v. Continental National Bank of Fort Worth, supra.* Further, the authority of an agent to endorse checks on behalf of his principal will not be lightly inferred. The mere fact that the relation of principal and agent exists, however broad and general the agency conferred, does not by implication embrace the authority to endorse checks on behalf of the principal, unless the authority is so essential

to the accomplishment of the agency as to compel the belief that it was intended to be granted, by reason of the fact that the object and purpose of the agency would otherwise be defeated. *Independence Indemnity Co. v. Republic National Bank & Trust Co., supra* at 1226. If it is not essential to the accomplishment of the agency purpose, the authority to endorse is not to be implied. *Heusinger Hardware v. Frost National Bank, supra; Independence Indemnity v. Republic National Bank, supra.*

 In the instant case, there is no evidence that Price had any authority to endorse checks on behalf of Miles Contractors. B.G. Freeman, president of the bank, stated in the stipulation of facts included in the record that neither he nor anyone at the bank ever made any effort to find out who was authorized to sign or endorse checks on behalf of Miles Contractors, and that he assumed Price was authorized to endorse the check and receive funds on behalf of Miles Contractors since he negotiated and executed the contract and supervised the job on a day-to-day basis. While the evidence is sufficient to support the conclusion that Price was an agent of Miles Contractors, we find no evidence to establish apparent authority in Price to endorse checks on behalf of Miles Contractors. Points of error one and two are overruled.

 In its fourth point, the bank contends that the trial court erred in rendering judgment for the reason that when the check or checks were delivered by the bank to the agent of the creditor, the original indebtedness was extinguished. We agree the debt was paid but we find no merit in this contention. Whether or not the contract for repairs between the bank and Miles Contractors was extinguished by delivery of the checks to Price is irrelevant, because this suit is not brought upon that contract. The fact that the bank issued the checks and also was the bank to whom the checks were presented is merely coincidental.

In this case, the bank serves in two separate and distinct capacities: (1) as a party

to a contract for repair work, and (2) as a banking institution honoring checks presented for payment. The bank performed its duties under the provisions of the contract when it delivered payment in full in the form of checks payable to Miles Contractors to an agent for Miles Contractors. When the bank honored the checks on an unauthorized endorsement, it was not acting under the terms of the contract, but in its capacity as a banking institution. The existence of the debt between the bank and Miles Contractors has no bearing upon the duty of the bank to follow standard banking practice when accepting checks for payment in its normal course of business. Point of error four is overruled.

In a fifth and final point, the bank asserts that the trial court erred in awarding attorney's fees to Miles Contractors since the facts in this case do not bring it within the provisions of TEX.REV.CIV.STAT. ANN. art. 2226 (Vernon Supp.1982–1983). We agree.

█ Miles Contractors pled for reasonable attorney's fees under art. 2226, which provides in pertinent part:

"Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, or suits founded on oral or written contracts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees...."

In the instant case, Miles Contractors is entitled to recover reasonable attorney's fees under art. 2226 only if this suit arises out of the contract for repairs between Miles Contractors and the bank. As already stated, the act upon which this suit is based is the bank's cashing a check payable to Miles Contractors upon an unauthorized endorsement, and not upon the contract for repairs. Consequently, Miles Contractors is not entitled to recover attorney's fees under art. 2226. Therefore, we must reverse and render that portion of the judgment relating to attorney's fees.

We affirm the award of $3,758.50 to Miles Contractors. We reverse and render the award of attorney's fees.